IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-00035-04-CR-W-HFS |
| | ) | |
| DEMETRIUS ARMON CORNELIUS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On February 14, 2020, the grand jury returned a superseding indictment charging Defendants Corey Smith, Dameon Williams, Kenyashae Roach, and Demetrius Cornelius with conspiracy to engage in sex trafficking in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1) and (2), and 1594(c) (one count against all Defendants); sex trafficking in violation of 18 U.S.C §§ 1591(a), (b)(1), and (c) and 1594(a) (four counts against Smith and two counts against Williams); transportation of a minor for prostitution in violation of 18 U.S.C. § 2423(a) and (e) (two counts against Smith and Williams); and interstate transportation for prostitution in violation of 18 U.S.C. § 2421 (one count against Smith). Doc. 31.

On March 2, 2022, the Court held a pretrial conference in this matter. Doc. 126. During the pretrial conference, counsel for Defendant Demetrius Cornelius informed the Court that his client wished to proceed pro se. *Id*. After the close of the pretrial conference, the Court held a hearing during which it had an ex parte discussion with Defendant and his counsel. Doc. 125. Based on the information provided, the Court indicated a *Faretta* hearing would be set as soon as possible. *Id*.

At 2:00 p.m. that same day, the Court held a *Faretta* hearing. Docs. 128, 169. Although Defendant initially asked to proceed pro se, he changed his mind at several points during the

hearing. *See* Doc. 169. For example, Defendant repeated his desire to represent himself, but he also told the Court he wanted to continue to be represented by appointed counsel or would "take" or "keep" counsel. *Id.* at 2, 4-5, 7, 20, 22-23, 27-28, 30-31. Defendant also displayed frustration with the Court's examination, telling the Court to do whatever it wanted to do, and it did not matter to him. *Id.* at 27-28. On at least two occasions, Defendant asked the United States Deputy Marshals to remove him from the courtroom and take him to his cell. *Id.* at 28-29.

Defendant's mental health was also discussed during the *Faretta* hearing. He informed the Court that he had been diagnosed with bipolar disorder and schizophrenia nearly his entire life but had not received medication or treatment for two or three years. *Id.* at 9-10. Defendant also stated he wanted a "mental health lawyer" because he was on social security disability, and with a "mental health lawyer," he could get help. *Id.* at 18-20, 29. At the close of the hearing, Government counsel, Catherine Connelly, expressed "grave concerns" as to Defendant's ability to represent himself. *Id.* at 31-32. Defense counsel, Robert Calbi, conveyed similar concerns. *Id.* at 32. The Court took Defendant's request to proceed pro se under advisement. *Id.* at 36.

Later that same day, defense counsel filed a Motion for Psychiatric Examination pursuant to 18 U.S.C. § 4241. Doc. 127. Due to his observations of Defendant during the *Faretta* hearing, defense counsel believed "Defendant may be suffering from a mental disease or defect which may render him incompetent to the extent that he is unable to understand the nature of the proceedings against him or to properly assist counsel with his defense." *Id.* at 2. Counsel further stated Defendant "says he has been diagnosed as 'bipolar and schizophreni[c]'" and "indicates that he receives social security disability due to this diagnosis." *Id.* Counsel asked the Court to order a mental competency examination. *Id.*

Based on the motion, the concerns expressed by Government counsel and defense counsel during the *Faretta* hearing, and the Court's observations of Defendant during the *Faretta* hearing,

the Court found there was reasonable cause to believe Defendant might presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense. Accordingly, pursuant to 18 U.S.C. § 4241, the Court granted defense counsel's motion. Doc. 129. The Court directed a psychological or psychiatric examination of Defendant be conducted and the report be filed with the Court pursuant to 18 U.S.C. § 4247(b). *Id*. at 3-4.

Defendant was designated to the Federal Detention Center – SeaTac for a psychiatric or psychological evaluation. On September 22, 2022, the Court received a report from Ryan Nybo, Psy.D., who gave the following opinion:

> Given the defendant's refusal to cooperate and considering the discrepant and conflicting information, there is not sufficient information at this time to provide an opinion with any degree of certainty whether or not the defendant suffers from a mental disorder that would substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him, or substantially impair his ability to assist counsel in his defense. Out of an abundance of caution, it is recommended Mr. Corneluis [sic] be committed to a Federal Medical Center for further evaluation and treatment as part of competency restoration procedures. This commitment would allow for a longer period of observation, further clarification of his diagnosis, and provide treatment as necessary.

Doc. 161.[1]

On September 27, 2022, the Court held an in-person hearing that was attended by Defendant, his counsel, and Government counsel. Docs. 164, 168. Counsel for the Government and counsel for Defendant stipulated that if Dr. Nybo were called to testify, he would testify consistently with the information in his report. Doc. 168 at 3-4. Defendant informed the Court that he believed his participation in the evaluation was not required, and that is why he chose not to participate. *Id*. at 4-5, 7-8. Defendant, through his attorney, asked the Court to indicate whether his participation in the evaluation was required so "he knows he has to do it." *Id*. at 8.

---

[1] Dr. Nybo's report was provided to counsel for the Government and counsel for Defendant.

Because Dr. Nybo was unable to opine as to whether Defendant is competent to stand trial due to lack of sufficient information, the Court concluded it would be best for Defendant to be examined at USP Leavenworth, where Defendant is currently housed, by a licensed or certified psychiatrist or psychologist. *Id*. at 9-11; *see also* Doc. 165. The Court told Defendant the evaluation "requires [his] cooperation," and he was expected and encouraged to cooperate with the evaluator. Doc. 168 at 9-10, 12-13.

On September 28, 2022, the Court ordered Stephen E. Peterson, M.D., to conduct a psychiatric or psychological evaluation of Defendant at USP Leavenworth. Doc. 165. In the Order, the Court directed Defendant to participate in the examination. *Id*. at 2. On November 1, 2022, the Court received a report from Dr. Peterson. Doc. 175.[2] According to the report, Dr. Peterson attempted to interview Defendant on October 20, 2022. *Id*. at 2. The details of Dr. Peterson's interactions with Defendant are included in this report; however, Dr. Peterson also provided the following summary:

> In the current assessment, Mr. Cornelius demonstrated symptoms consistent with active psychotic illness (delusions and/or hallucinations). This included obvious paranoia (that [Dr. Peterson] lied to him and everything he said would be used against him), flat affect and monotonous tone of voice (often indicative of impaired reality awareness), poor memory (could not recall any of extensive discussions during the Motion to Determine Competency in the previous month), poor reading comprehension (seemingly did not understand or rejected easy to understand transcript exchanges between he and the judge that this was a court ordered evaluation), disturbance by inner prompting consistent with delusions/hallucinations (muttered "used against me" to himself), multiple accusations of being "sneaked" on, poor behavioral control (taking papers and then fleeing into a different room of the prison), erratic thinking (pro se but will need a lawyer to help and then wanting to ask for help from the judge), delusions (that he was a hostage), and refusal to follow basic procedural expectations (had to have the transcript now and wouldn't wait to speak with the judge about getting a transcript through appropriate channels).

*Id*. at 3.

---

[2] Dr. Peterson's report was provided to counsel for the Government and counsel for Defendant.

Dr. Peterson opined Defendant's inability to participate in the assessment was "provisionally due to active DSM-5-TR Schizophrenia Spectrum Disorder (F28.9)." *Id*. He also indicated it was "medically likely" that Defendant "is not currently competent to stand trial." *Id*. According to Dr. Peterson, Defendant "demonstrates active mental disease (untreated schizophrenia spectrum disorder with paranoia and erratic thinking), shows consistent cognitive impairment, appears unable to rationally understand/participate consistently in the proceedings against him, and is unable to properly assist in preparing a defense with his attorney or proceed pro se." *Id*. He further explained:

> Clinical information within the FDC SeaTac and the current assessments clearly demonstrates [Defendant] is showing fundamental evidence of undertreated schizophrenia. That evidence includes . . . Delusions (that he is a hostage, has a microchip implanted), Hallucinations (inner prompting and talking back to someone or something), Disorganized Thinking (with derailment/incoherence, cannot follow judge's recommendations), Grossly Disorganized Behavior (impulsive "flip-flopping" decision-making, unable to grasp basic written concepts, snatches papers to run to a different part of a prison), and Negative Symptoms (flat emotional expressions, monotone voice, apparent disconnection from reality).

*Id*. at 4. In his professional opinion, Dr. Peterson found it was "medically unlikely" that Defendant "will recover trial capacity on this own." *Id*. He recommended Defendant be transferred to a medical facility "for appropriate psychiatric medication treatment and appropriate orienting/milieu therapy." *Id*.

On November 16, 2022, a hearing was held pursuant to 18 U.S.C. § 4247(d) for the purpose of determining Defendant's mental competency to stand trial. Docs. 178, 179. Counsel for the Government, counsel for Defendant, and Defendant all appeared in person. *Id*. Counsel for the Government and counsel for Defendant stipulated that Dr. Nybo and Dr. Peterson, if called to testify, would testify consistent with their respective reports. Doc. 179 at 3-4. No additional evidence was offered by counsel for the Government or counsel for Defendant. *Id*. at 3-4.

During this hearing, Defendant also addressed the Court. *Id*. at 4-7. Among other things, Defendant said "they're trying to act like" he is "crazy" because he mentioned he has a "chip" in his head. *Id*. at 6. He asked for an MRI to see if he is lying about the chip and/or remove the chip. *Id*. The undersigned informed Defendant that he was taking the issue of Defendant's competency under advisement and would issue a report and recommendation regarding same. *Id*. at 4, 6.

Based on the foregoing, including but not limited to the uncontroverted findings and professional opinions of Dr. Nybo and Dr. Peterson and the Court's observations of and interactions with Defendant, it is

**RECOMMENDED** that the District Court, after conducting its own independent review of the record, find that Defendant is incompetent to understand the nature and consequence of the proceedings against him and assist properly in his defense. It is further

**RECOMMENDED** that, pursuant to 18 U.S.C. § 4241(d), the Court enter an order committing Defendant to the custody of the Attorney General for hospitalization and treatment in a suitable facility for a reasonable time up to 120 days to determine whether there is a substantial probability that in the foreseeable future, Defendant will attain the capacity to permit the trial to proceed.

Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation.

DATE: November 29, 2022　　　　　　　　　　　　*/s/ W. Brian Gaddy*
　　　　　　　　　　　　　　　　　　　　　　　W. BRIAN GADDY
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE